Mr. Sigala-Salazar does not have notice of what conduct may or may not result in later imprisonment in a revocation proceeding once he is removed from the United States and serving his supervised release term outside of the territorial limits of the United States. Because of this due process-based vagueness problem, the Court should remand for just for the district court simply to clarify whether and how the conditions would apply once he is outside of the United States under the removal order. Scalia We're reviewing this condition for plain error? Yes. And there's a series of all of, I must say, non-precedential decisions in this circuit that say it's not plain error. And the manual that deals with the supervision, the sentencing guidelines manual, basically says we don't supervise anymore when somebody is outside the United States. So given that, what's the problem with this particular? Yes. This particular part of the supervised release terms? Yes. So I will address the second part of your question first to clarify that the manual I think that the Court is referencing is actually the probation office's manual. Right, right. Yes. And so internally, yes, it appears that the probation office sort of administratively closes the case and says they're not supervisable once they're removed. But that's discretionary, and what we're looking at here is what the judgment actually states. But all the judgment states, you know, first of all, the judge did the appropriate things. He made the finding of why he wanted to continue after the end of imprisonment and during a possible removal period, because he said he was, your client had family in the United States and might come back, and therefore the conditions were appropriate. But I guess because we're reviewing for plain error and looking for a substantial injustice, given that he's pretty unlikely to be monitored while in Mexico, why is there substantial injustice? So I'll first address why the error, it's an error that's plain, and then why his substantial rights are violated. I do think that's an interrelated analysis. Sure. Sure. I'm having trouble finding the error plain, given that at least a bunch of panels of the Court have found it not to be plain. But go ahead. Address that. Absolutely, Your Honor. And the reason that the error is plain here is that this Court's doctrine on vague supervised release conditions and how clear they must be has been well established for many decades. The briefing cites to many of those cases. But not in the context of an extraterritorial application. And that's what you would have to tell us, that it's vague in terms of application outside the United States. And if there is no case that says that, it can't be plain error, can it? No, Your Honor, because the issue and the law that is well established is whether he has notice of how he should conform his conduct while on supervised release, and that's the problem. But doesn't he have notice that while on supervised release, let's we can get to the other conditions, but he has notice that he should conform his conduct to the supervised release terms. You're saying as well, he's not sure about that if he goes to Mexico. And the answer is he should be sure about it. There are supervised release terms, and the judge imposed them without an exception. So I don't understand the vagueness problem. I think the vagueness problem is, as explained in the plain language of the conditions, but also in the parties' positions. What specifically, what specifically in the supervised release conditions will he not know how to comply with? Your Honor, many of the mandatory conditions and the standard conditions, whether he can submit to mandatory drug testing, that's that occurs in the United States in every other case. But he won't have to worry about submitting to mandatory drug testing unless someone comes to him and asks him to submit to mandatory drug testing. So it's not the – there's no vagueness about the provision. He's saying, gee, I'm going to be in Mexico, and I'm not sure they're going to enforce these against me. And I'm not sure that's a vagueness issue. That's just – you may well not have to comply with him in Mexico because nobody will be checking. But that's not a vagueness issue, is it? I do think that it is, because if you read the language of the condition, it is not at the probation officer's request. You must submit to one drug test within 15 days of release from Bureau of Prisons. Within 15 days of release? Yes. That's not vague. Release from imprisonment. Right. So you're afraid that he'll be removed during those 15 days to Mexico and then violated because the U.S. Government put him in a position where he couldn't submit to a drug test? I believe that that's what the conditions would allow. And that's what this Court says the problem is. It's not whether the government promises now that it would not do that. And I do think that that would raise a bunch of jurisdictional issues. But the – and that's why this Court routinely remands conditions, just to be written to be clarified. Right. And sometimes we say – we routinely remand it when it's attacked. But a lot of the time, we've said it's just not plain error. So it'd be helpful to me if you'd move on to the specific conditions, other than the general one that it'll apply even if removed, and particularly in light of the focus order that we issued yesterday, and see which ones are at issue and which ones are not. Absolutely, Your Honor. And so I would like to make two main points about the U.S. v. Nishida case that came out yesterday afternoon. First, the general principle is reinforced in that decision that the Court cannot construe a supervised release condition contrary to its plain language. So if a condition is unconstitutional by its plain meaning, then this Court remands for correction. And I would just submit that that is a general principle that is applicable to every challenge raised in this appeal. They're mostly constitutional vagueness challenges about the meaning and scope. Okay, well, let's – again, I'd like you to talk about specific conditions of supervised release. Absolutely, Your Honor. Tell me which ones Nishida directly affects, and you can go on to tell us why you think its principle affects others. Absolutely. And so my second point is that specifically Nishida controls the mental health supervised release condition at issue here. Nishida held that the condition authorizing the probation officer to, quote, supervise the participation and the intensity and duration, or the intensity and the – I'm sorry, I won't say it. No, I understand what it says. Let me ask you a question. Duration. I think they're exactly the same conditions. Yes. But you, on appeal, you didn't attack that condition for that reason. You said the condition would allow the involuntary administration of psychotropic drugs to your client. Does it make a difference that you didn't raise the same issue that Nishida raises? No, Your Honor, because I don't think it's a matter of issue. I think it's a matter of argument. So Nishida and — Why wouldn't it be a matter of issue? Why wouldn't it be a matter of the specific issue that was addressed in Nishida? Because everything that is being raised in both cases is due process based, and — Yeah, but your due process argument dealt with administration of drugs. The due process argument in Nishida dealt with not knowing, you know, whether there were any standards applicable to the probation officer's decision. Those are two different arguments. We might forgive that overlooking, but you are making a different argument than they made in Nishida, are you not? I agree. It's a different argument, but I think as far as claim preservation and what is at issue, I would direct this Court to Evans, which is cited in the briefing, which explains that the vagueness doctrine is specifically intended to ameliorate conditions such as the delegation issue of delegating too much discretion to a probation officer. But the reason I was asking is this. If what you're worried about is the involuntary admission of psychotropic drugs, I think we have some case law that says we don't read that into — as opposed to what Nishida said, you have to read these things plainly. And we could surely issue a memorandum of disposition in this case that said this condition does not allow the involuntary administration of psychotropic drugs to your client, and then you wouldn't have to worry about it. Correct? I think that that would be helpful, but I do worry that that is still not what the actual judgment states. Well, no, but we could say under our case law that judgment cannot include that, and we say it does not. So I thought that was a problem we could solve on the argument you actually made. It doesn't address the Nishida issue because that's not the issue raised in Nishida. So I think the court does have discretion as to how you handle an erroneous supervised release condition. The court can correct it. The court generally prefers — it appears on U.S. v. PEDD, for example, that the court will remand for the district court to rewrite it as a general matter. But, of course, this court has discretion to issue the limiting reading. And I do — I do submit that Nishida applies here and is not a way to issue — But Nishida covers this exact same condition. Yes. But it doesn't deal with any other condition that's at issue in this case, correct? Not the — not the holding, no, not the facts and the holdings. But the general principles, I think it's all throughout this brief that we really — we can't — I think that a problem with the court — with the plain-error issue that the court — with the court seeing the plain-error is that the parties tend to agree what the condition should look like and should — and were intended to be. But we have to look at the language. Here's my problem. Here's my plain-error. It gives me some heartburn. Had anybody raised these objections to the trial judge, they likely would have been fixed. And so now we're up here arguing about, well, the condition is generally okay, but it might apply more broadly than it was intended. And that's what objections at trial are about. And so I know Nishida finds plain error in analogous circumstances. But it's frustrating to have — for us to have to try to rewrite something that the court has put up to him, not your — you know, you're here. It's not your problem. But it's our problem, and it bothers me. I understand, Your Honor. And that's why I would point the court to Rosales-Morales, the U.S. Supreme Court case that addressed plain error. It's in our briefing, the reply brief. It addressed the plain-error standard, and it said, while not costless, resentencing is generally what should occur for a plain-sentencing error because it just — it generally requires just the defendant, defense counsel, government counsel, and the court to quickly resolve an issue. And here, it's even less than a full resentencing. Scalia, I wanted you to address specific ones. And I'd like to ask you to address the computer search and monitoring conditions. These are a little bit different than the ones in Wells. Wells said you can't possess a computer, and the court said, well, a computer might mean a lot of things. But here, the condition is that you have to submit, upon the request of a probation officer, computers in order to have monitors put on them. Once the monitors are put on them, it's not vague at all. And isn't the vagueness, any vagueness issues, solved by the fact that the probation officer has to put the monitor on the computer? In other words, nobody is saying to you, you can't possess whatever you want to possess. You just have to let the probation officer put a monitor on whatever he wants to put it on. Why is that a vagueness problem? Yes, Your Honor. So, first, to address Wells, I don't think that this case is materially distinct from Wells because — Completely different from Wells. Wells says you may not possess a computer. This — you can possess anything you want in this case. All you have to do is allow the probation officer to place monitoring devices on whatever — monitoring equipment on whatever devices he wants to. Those are two completely different conditions. Well, I would submit that's not true because there is a general search condition in this case that also covers computers. That is Special Condition 7. So there's Special Condition 7 that covers searches and seizures and also incorporates that all-encompassing statutory definition. Did you challenge Special Condition 7 on appeal? Yes, Your Honor. Okay. So I'm asking you now about 11 and 12. What's wrong with 11 and 12? Well, 11 and 12, what is wrong with them is they're internally inconsistent with 7, which requires reasonable suspicion, and so they can't be read together. But he doesn't have to have reasonable suspicion to place a monitor on the computers. That's all — That's not what the conditions say, Your Honor. 11 and 12 say he can place monitoring equipment on computers, correct? Well, it authorizes a search for monitoring purposes. And 7 authorizes searches only based on reasonable suspicion. So there is — there is tension between those two conditions. I just think that, again, this is plein air. This was not brought up to the district court. So I agree with you. It could have been resolved below, probably pretty easily, by putting some sort of — by reconciling them. 7 allows a search on reasonable suspicion? Only. Only. What's wrong with 7, then? The problem with 7 is that it — similar to Wells, it talks about possessory interest and incorporates the statutory definition. Yeah, but the problem there is that it doesn't make it illegal for him to have a computer. It just subjects the computers to search on reasonable suspicion. So the vagueness problem in Wells, which was, I can't know what equipment I can possess, isn't posed by number 7, is it? Yes, it is, because the vagueness doctrine does not only control notice to Mr. Segal Salzar. It's what the probation officer can do. So there cannot be this unfettered discretion under a vague definition of computer that the probation officer — If Wells says that that, incorporating that statutory definition, renders it too vague to know what could be possessed or what shouldn't be, then it also means that a probation officer can't know what they are allowed to search or not under that definition. Even if he has reasonable suspicion? Even — and that's setting that apart. That is, of course, a requirement before they can search, but before you know if you can search, you have to know what it is that falls within the search clause, what items, what electronic devices. The condition also says other — So we're here on plain error. Has any panel of this Court ever found Condition 7 unconstitutionally vague? I don't think — no, not the exact language. There's a yes or no answer to it. No, but Wells is — Has any panel of this Court ever found 11 and 12 unconstitutionally vague? No. But that's not what's required. As Nishida said, it's not the exact language. It doesn't have to be a word-for-word recreation of the condition. If the exact same problem is present in part of the wording of the condition, then it is a plain error. And so that's why I'd submit that under Wells, all the 8, 11 — or, I'm sorry, 7, 11, and 12 should just be remanded under Wells for the parties and the district court to work out how to reconcile them and limit them. And I — we would also request remand under Nishida for the mental health condition. So I see him well out of my time. So thank you, Your Honor. We'll give you a minute for a bottle. Thank you. Thank you. Good morning. May it please the Court. Adam Flake for the United States. With respect to the mental health condition, I think that this Court can simply say what the parties agree, which is the mental health condition does not include the ability to force medication. And if the Court says that and the — Well, but we now know from an opinion of this Court issued yesterday that — It was a fun night last night, Your Honor. — that this condition has other problems, if you will, that weren't addressed. It — today is plain, if it wasn't plain until yesterday, that the condition is illegal, I guess. And so why shouldn't we just send it back for the district court to fix it? Well, I just — I don't think it's necessary because this Court has — even as of today, this Court has never read that condition to include a requirement to submit to force medication But we have — we have also here a pornography condition that at least two panels of this Court have already found to be plain error. If we have to send that one back, why shouldn't we send this one back, too, for the Court to initiate it? I mean, if the Court is going to send it back, then the Court can certainly instruct the lower court to make it more clear. But again, I don't think it's necessary because I don't think that this — the mental health condition has ever been read in the problematic, hypothetical way that the defense — Can you turn to the pornography condition? While I might at first blush, think that it was vague, at least a couple of panels of this Court have found it to be plain error. I understand they're non-presidential decisions, but why shouldn't we treat it as plain error? Well, first of all, because they are not — But they can be persuasive. They can be persuasive. It doesn't mean the second — I mean, the second prong, I don't think, is met. And also, as we pointed out in a footnote, it's hard to see how fixing the condition will — Well, you could — they could fix it by saying you may not look at pornography at all. Right. And so it's hard to see how a more — a broader condition can somehow vindicate a substantial right. Well, I guess here's the problem, and this is why I'm not sure the M.D.I.S.P.s are right, but let me pose it to you. He says, I don't know what pornography I can — it's not a general pornography ban. I can only look at pornography that might interfere with my treatment, and I don't know what that is. And no one's going to tell me. So now I'm left out there at sea to decide what kind of pornography I can look at. And it would be a less vague provision if it said no pornography at all, wouldn't it? It would be less vague, but it would also be — More restrictive. More restrictive. But that's not — that's not his — it's not his argument. He's not arguing that it's too restrictive. He's arguing that it's vague. That's correct, Your Honor. But again, I don't — I mean, I don't think it is — I don't think it is plain that it is vague, and I don't understand how it could vindicate his substantial rights to — I mean, I guess it vindicates the right to have a non-vague — it's just — it's interesting because it seems like it's two sides of the same coin, that we — he says, I don't know what this means. We say, don't bother figuring it out. You just can't look at anything. And now he has — Well, but you didn't say that. See, if it said that, then he would have clear notice that he can't look at anything. Right. I think — I think the vagueness problem is, I don't know what this means. I don't know what pornography might interfere with my treatment. Right. If — if — if some prior notice were required, then I wouldn't have any — a vagueness issue. You know, yes, he could comply with it by not looking at any pornography, but I guess he may have a First Amendment right to look at some pornography in the absence of a — in the absence of being told that he can't. I think Your Honor is correct. So address the other ones, because we have here, I think, an attack on the general notion that — that he doesn't know what he should do when he goes to Mexico. We have the search conditions 7, 11, and 12, and — and we've already talked about the pornography and mental health conditions, so could you address the other ones? Yes, Your Honor. With respect to the search and monitoring conditions, as we pointed out in our brief, I think the language of each of those conditions keeps them from being vague. With respect to the general search condition, it requires a showing of reasonable suspicion before they can — before probation can conduct the search, and that alleviates, I think, any concern that we're going to be searching his typewriter or his calculator or his — his refrigerator, because as far as I know — I mean, I guess you could physically put printed copies of child pornography in a refrigerator, but a refrigerator computer, we could — probation could never develop — Well, his refrigerator is subject to search — unreasonable suspicion anyway, under this condition. But the refrigerator's computer, if it has one, it can't — probation could never develop — excuse me — could never develop reasonable suspicion that that computer is somehow — I understand — I understand your friend didn't make a different argument. I'm not sure it's the argument that was in her brief, but let me rephrase it for you. It's that the probation officer will have unfettered discretion about which devices to search on reasonable suspicion, because — because this doesn't tell them which devices are computers. But I think — I think the reasonable — reasonable suspicion requirement is what — I'm not sure if fetters is a word, but what cabins the discretion. In order to conduct the search, he — the probation officer has to develop reasonable suspicion that that device contains child pornography. Refrigerators, computers, do not — people do not use refrigerator computers to access child pornography, and therefore, the probation officer could never develop the reasonable suspicion required to subject his refrigerator or his thermostat's computer to a search. So I think that — I think the reasonable suspicion requirement is what — what cabins his — the officer's discretion. I'm reading this condition. If it had no computer language in it, and there was reasonable suspicion to think there was child pornography information on the computer in the refrigerator, wouldn't he have the ability to search it anyway, because he has the ability to search the premises? I believe so, Your Honor, yes. How about 11 and 12? 11 and 12 don't contain a reasonable suspicion requirement, but what they do contain is that they have to be capable of monitoring to make sure that they're not accessing child pornography. And that, again, cabins the officer's discretion, because a thermostat cannot be monitored — But let's assume he monitored it. Would there be a vagueness problem? There might be a — there might be a search problem. In other words, you might be — you might be making a search without reasonable suspicion, but there wouldn't be a vagueness problem. I think — I think Your Honor is correct. So one question I have about 11 and 12, do the search conditions go backwards or only forwards? In other words, if I'm — if a monitor is placed on a computer, is that only a forward-looking search or can they look backward and see what was there up to that point? I believe that the — I don't think that either condition — I don't think that 7 or 11, 12 specify, but I believe that the monitoring condition is tied to, we can search your computer to make sure that you have the monitoring software installed. And so that would obviously only apply after, so that would be a prospective condition. So that's what I was trying to figure out from reading it. The search is to make sure that you haven't taken off the monitoring software. Yes. Okay. Thank you. And then the — yeah, I think the other one is — I mean, they're obviously all prospective because they can't — I mean, they're prospective in terms of the search, but I don't think that the general search provision — Well, see, that's what I'm asking. I'm trying to mesh the two together. So let's assume they had reason to think they hadn't put the monitoring device on yet, but they had reasonable suspicion that there was child pornography on the computer, you'd be using number 7 to find that. Correct. That's correct. 11 and 12 are to monitor what he's watching from that point forward. That's correct. Okay. Now deal with Mexico for us. Again, Your Honor, I think that any — I don't think that there is a vagueness problem — I shouldn't say again. I haven't addressed it yet. But I don't think that there is a vagueness problem because the very first condition says don't return to the United States. If you do return to the — I'm paraphrasing, of course. If you do return to the United States, you must report to probation within 72 hours. And I think that makes it clear. Don't return to the United States. Well, what about the condition that a drug test has to be performed within 15 days of release? Once again, I think that is cabined by the first line of the condition that says don't return here, and if you do, then report to probation within 72 hours. I don't think — But what if he's not deported within 15 days? I mean, if he is on supervised — if somehow he ends up here and on supervised release, then it would apply. But I don't think that he — I don't think that there's a basis for saying if I get sent to Mexico, I'm not allowed to come back to America, but I have to come back to — No, Your Honor. How does he — how can we tell that from reading? How can we tell that from reading the condition of supervised release? Because he's not allowed to come back here, but he is required to report if he does come back. You think that — those things taken together mean don't worry about any of these conditions if you're in Mexico? Yes. So let's assume he got a catch of child pornography when he was in Mexico and piled it up on his desk. And would he be — could he be violated for that? From Mexico? Yeah. I mean, let's assume he sends a picture back to his probation officer that says, ha-ha, I'm in Mexico, I'm reading child pornography now. Can he be violated? I don't believe so, Your Honor. I don't think that — How can I — how can I tell that from the conditions? In other words, there's nothing in this that says the conditions don't apply to you when you're in Mexico. And that's — I think that's his gripe. I think his gripe is not, you know, you're making me come back to get a drug test and I'll be arrested and charged with illegal reentry. His gripe is, I don't know what conditions will apply after I'm removed to Mexico. And what's the government's answer to that? The only answer I have is that it is clear from how it's written, requiring him not to come back and requiring him to report if he does come back is sufficiently clear. I agree those are clear. Is it clear that none of the other conditions apply when he's in Mexico? I believe it is, Your Honor, based on those — based on those two. So you wouldn't mind if, in disposing of this case, we said we read this as saying that no conditions apply when he's in Mexico? That's correct. That's our position, that they do not apply. Okay. Just to go back to the drug test for a minute, are you saying that if he leaves within five days, he's not required to take the drug test? That's correct, Your Honor. If the panel doesn't have any other questions, I'll submit. Thank you. All right. Thank you, counsel. One minute for rebuttal. Thank you, Your Honors. Two quick points on rebuttal. First, for the monitoring condition — oh, and I apologize — Judge Hurwitz, as to your question, it is not only perspective. Number 12 states that these searches shall be conducted for the purpose of determining whether the computer contains any prohibited data prior to installation of the monitoring software. So why shouldn't we read the reasonable suspicion provision in 7 as covering that? Because I don't think that that is plainly — That's what you want us to do. Absolutely. That's what you want us to do. So I guess I'm asking why shouldn't we read the reasonable suspicion in 7 as covering that? I wouldn't disagree with the Court doing that. All I'm saying is that the case law says that we have to be true to the plain language and remand to the district court if there's a problem, but also if the Court can construe it that way, then that would assist with the vagueness issue and the contradictions between the conditions. And I'm sorry, I'm out of my time, so I will submit on that. And we request the Court to at least clarify all of these conditions in a written decision so that Mr. Salazar knows what conduct he needs to avoid or comply with to prevent his liberty from being revoked later. Thank you, counsel. Thank you, both counsel. The case just argued is submitted for decision by the Court.
judges: Linn, RAWLINSON, HURWITZ